UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
:    06 CV 1007 (ARR)(LB)
NICHOLAS ZIMMERMAN, :
:
           Petitioner, :
: OPINION AND ORDER
   -against- :
:
SUPERINTENDENT JOHN BURGE, :
Auburn Correctional Facility, :
:
           Respondent. :
:
------------------------------------------------------------- X

ROSS, United States District Judge:

Pro se petitioner Nicholas Zimmerman filed the instant petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254 on February 16, 2006. In his petition, Mr. Zimmerman

raises the following claims: (1) he was denied the effective assistance of trial counsel by (a)

counsel's decision to forgo pre-trial motions and investigation of petitioner's alibi defense in

order to proceed directly to trial and (b) counsel's failure to list certain alibi witnesses on the

notice of alibi and to call other defense witnesses; (2) the trial court violated his right to

compulsory process by prohibiting him from calling alibi witnesses; (3) the trial court erred by

allowing improper bolstering of the complaining witness's identification; (4) the prosecution

knowingly solicited perjured testimony; and (5) he was denied the effective assistance of

appellate counsel by counsel's failure to effectively support a missing witness charge claim. For

the reasons given below, the instant petition is denied.[1]

---

[1] After petitioner's habeas application was fully briefed, petitioner moved for appointment of
counsel. The court denied petitioner's request without prejudice, stating that the request would be
revisited after the court had an opportunity to review the record. Having reviewed the record, the court
determines that the interests of justice do not require appointment of counsel. See 18 U.S.C. § 3006A;

# BACKGROUND

## 1.    Pre-Trial Proceedings

Petitioner was indicted by a grand jury in the Supreme Court of the State of New York, Queens County, on October 15, 1998. He was charged with using a handgun to threaten a woman named Nikia Stubbs in the early morning hours of September 19, 1998. Petitioner failed to attend court appearances prior to his arraignment and a bench warrant was issued for his arrest. He was arrested three years later in Nassau County on unrelated charges and was returned to Queens County on November 21, 2001 for arraignment. At petitioner's arraignment, trial counsel waived all pre-trial motions and requested to proceed directly to trial. (See Arraignment Tr. at 7.) Trial counsel disputed the prosecution's statement of readiness, stating "if they can't even tell us where the identification witness is, they certainly cannot be ready to proceed to trial." (Id. at 3.) Counsel also reported that Nikia Stubbs had informed petitioner that she was not going to press charges and that she had told individuals sent by counsel's office that she was not going to testify. (See id. at 4-5.)

---

see also Cooper v. A. Sargenti Co., 877 F.2d 170, 172 (2d Cir. 1989) (providing relevant criteria for the court to consider when deciding applications for appointment of counsel by civil litigants). Petitioner's legal and factual claims are clearly and quite articulately presented in his habeas petition. In addition, petitioner's request primarily relates to investigating new evidence of his factual innocence, including affidavits and a videotape. Newly discovered evidence of actual innocence on habeas review is only relevant to the extent that it directly relates to an underlying federal constitutional violation or to overcoming a procedural bar. See Herrera v. Collins, 506 U.S. 390, 400-04 (1993). Here, the evidence petitioner seeks to obtain does not appear to relate to his constitutional claims, nor do his procedurally barred claims have sufficient merit so that appointment of counsel is required to help him make the case that the procedural bar should be overlooked. Furthermore, petitioner hired a private investigator subsequent to his conviction and retained counsel in his first § 440 proceeding. Petitioner has failed to persuasively explain how, more than five years after his trial, new counsel would be able to assist him to obtain relevant evidence that was not previously located.

On November 26, 2001, trial counsel filed a notice of alibi stating that Andre, Brian and Chris Dallyrymple would testify that petitioner was at JamRoc Club in Hempstead, New York at the time of the crime charged. (See Ex. B at A-10, A-19.) The trial court rejected the alibi notice, finding that the defense's prior declaration of trial readiness precluded its filing. (See id. at A-11, A-20.) On December 6, 2001, the prosecution agreed to accept the notice of alibi on the condition that the three alibi witnesses were made available for an interview prior to testifying. (See Trial Transcript ["Tr."] at 9.) Defense counsel's request for an adjournment of the trial until December 11, 2001 was granted. (Id. at 10.) On that date, defense counsel again requested an adjournment of the trial "in relation to" the alibi witnesses. (Id. at 18.) The trial court denied the request, finding that the defense had stipulated that the witnesses would be produced to the state prior to trial and had failed to so. (Id. at 18.) The trial court further stated that jury selection would take a couple of days, but the witnesses would be precluded from testifying if they were not made available to the prosecution prior to opening arguments. (Id. at 18-19.)

## 2.    Trial, Post-Trial Motions and Sentencing

At trial, Stubbs testified that she made an arrangement with petitioner, whom she knew as "Sean," and his girlfriend, Jatanya Belnavis, to rent her Jeep Grand Cherokee for a week. (See Tr. at 377-78.) Stubbs had been friends with Belnavis for more than ten years and had met petitioner twice previously. (Id.) A few days after Stubbs rented the car, her boyfriend, Wilson Barnes, persuaded her to retrieve the car so she could sell it. (Id. at 380-81.) Accordingly, she called Belnavis on September 18, 1998 and asked for the car to be returned. (Id. at 381.) Later that evening, when the car had not been returned, she called petitioner's cellular phone, and he told her that he was on his way. (Id. at 384.) When he did not arrive, she continued to call but

3

failed to reach him. (Id. at 384-85.) At around 2:00 or 2:30 a.m. on the morning of September 19, 1998, Stubbs, along with Barnes and her friend Karisha Brathwaite, drove to petitioner's house to look for the car, and when they did not find it, drove to Belnavis' house. (See id. at 385-88.) Stubbs spoke with Belnavis briefly and asked her to call petitioner and tell him to return the car. (Id. at 390.) Stubbs, Brathwaite, and Barnes returned to the car, and Belnavis approached and chatted with them some time later. (Id. at 391-92.) Stubbs testified that she then heard petitioner say, "Jatanya move. Duck down." (Id. at 394.) She stated that petitioner and another man approached the car, petitioner put a semi-automatic gun to her head, and the two men pulled her out of the car. (See id. at 394-95, 398.) Stubbs further testified that petitioner told her to run for her life, but she just stood still, and he fired several shots into the air. (See id. at 404-06.) According to Stubbs, she then ran back toward the car she arrived in, and petitioner and two other men drove away in her Jeep. (See id. at 407.)

Brathwaite testified for the prosecution that she saw two men approach the car and one held a gun to Stubbs' head and ordered her out of the car. (See id. at 300-02.) She also testified that she heard Stubbs call out, "Sean[!]" when the man with the gun approached. (See id. at 300.) Barnes did not testify.

On December 17, 2001, subsequent to the close of the state's case, defense counsel attempted to call Theophulus Brown and Haron Wilson to testify. Trial counsel informed the court that the witnesses were going to testify that Mr. Zimmerman, using the stage name "Puzz Pacino," entered into a contract to perform at the JamRoc Club at the time of the alleged incident. Trial counsel emphasized that the witnesses were "not going to testify that he was there that night" but only authenticate the contract for the performance. (Id. at 561.) The trial court

4

precluded the testimony of Brown and Wilson, finding that "it is a method of seeking to get evidence relating to alibi in in an improper manner where the proper manner of presenting the alibi has not been obtained." (Id. at 569.) The defense called two witnesses to testify, neither of whom were alibi witnesses or eyewitnesses. The Dallyrymples, the individuals listed in the original notice of alibi, did not testify. After the close of all the evidence, defense counsel sought a missing witness charge in relation to Barnes, but the trial court denied the motion. (See id. at 587-88.)

The jury found petitioner guilty of criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree, and menacing in the second degree. (Tr. at 686.)

On January 14, 2002, defense counsel filed a motion to set aside the verdict pursuant to N.Y. Crim. Proc. Law § 330.30 on the basis of insufficiency of the evidence. (See Resp't Ex. A at A-12 to 13.) Counsel attached copies of a performance contract and promotional flyer for a performance by "Puzz Pacino" at JamRoc Club at 2:00 a.m. on September 19, 1998, signed by Haron Wilson and Theophulus Brown. (See id. at A-14 to 16.) He also attached an unsworn letter by Heron Wilson, stating that he would have testified that he was with petitioner on September 19, 1998 from 1:00 a.m. to 4:30 a.m. and saw petitioner perform at JamRoc Club. (See id. at A-17.) Wilson further stated that defense counsel had attempted to contact him, but he had changed his telephone number so it took time to reach him. (Id.) At the sentencing hearing on January 17, 2002, petitioner moved pro se to set aside the verdict on grounds that he had insufficient time to locate alibi witnesses and did not agree with counsel's waiver of his pre-trial motions. (Sentencing Tr. at 15-18, available at Dkt. No. 29.)

5

The trial court denied petitioner's post-trial motions. (Id. at 18, 20.) Petitioner was sentenced as a second felony offender to concurrent terms of fifteen years for criminal possession of a weapon in the second degree, seven years for criminal possession of a weapon in the third degree, and one year for menacing in the second degree. (Id. at 23.)

## 3. Direct and Collateral Appeals

Petitioner appealed his conviction to the Appellate Division, Second Department. Petitioner contended that (1) the trial court erred when it denied trial counsel's request for a missing witness charge concerning Barnes; (2) his trial counsel was ineffective for (a) failing to object to evidence of petitioner's criminal history and (b) failing to file pre-trial motions, to call the alibi witnesses listed in the notice of appeal, and to provide notice of two additional alibi witnesses; and (3) the trial court erred in allowing the state to elicit petitioner's prior criminal conviction. (See Resp't Ex. A.) By order dated October 14, 2003, the Appellate Division affirmed Mr. Zimmerman's conviction, finding that (1) the claim regarding the missing witness charge was unpreserved for appellate review and also meritless; (2) the ineffective assistance of counsel claim relating to potential alibi witnesses involved matters dehors the record and therefore was not properly presented on direct appeal; and (3) the record demonstrated that counsel provided meaningful representation at all stages of the proceeding. See People v. Zimmerman, 765 N.Y.S.2d 524, 525 (N.Y. App. Div. 2d Dep't 2003). The Court of Appeals denied leave to appeal by order dated January 28, 2004. People v. Zimmerman, 808 N.E.2d 370 (N.Y. 2004) (table).

On January 10, 2003, petitioner filed a motion to vacate his judgment of conviction pursuant to N.Y. Crim. Proc. Law § 440.10. In his motion, petitioner claimed that he was denied

6

the effective assistance of trial counsel by counsel's failure to file a timely notice of alibi and to make petitioner's alibi witnesses available to the prosecution. (See Resp't Ex. G.) Petitioner attached affidavits from five individuals indicating that they were available to testify in his defense but were not called. (See id.) Mr. Zimmerman also recounted his interactions with trial counsel in an additional affidavit filed in support of his ineffective assistance of counsel claim. (See id.) On April 1, 2003, the § 440 court denied petitioner's motion on the merits. See People v. Zimmerman, Ind. No. 3296/98 (N.Y. Sup. Ct. Queens Co., April 1, 2003), available at Resp't Ex. I. The court held that trial counsel's attempt to force a trial before the state was ready was a reasonable trial strategy and found insufficient evidence that the new alibi witnesses were available at the time of trial. See id. Petitioner sought leave to appeal to the Appellate Division, and his application was denied by order dated July 24, 2004. People v. Zimmerman, Ind. No. 3296/98 (N.Y. App. Div. 2d Dep't, July 21, 2004), available at Resp't Ex. O.

On July 17, 2003, petitioner brought a second § 440 motion claiming that (1) the prosecution withheld Brady/Rosario material relating to a cooperation agreement with Stubbs; (2) Stubbs' identification of petitioner was unduly suggestive; (3) the prosecution knowingly suborned perjury by eliciting false testimony by Stubbs that she was not offered a deal in exchange for her testimony; (4) a videotape showing an interview with petitioner at JamRoc Club at the date and time of the incident constituted newly discovered evidence of petitioner's innocence; and (5) there was newly discovered evidence supporting his ineffective assistance of counsel claim, namely a letter written by petitioner to his attorney on November 22, 2001 asking whether counsel had waived his pre-trial motions and an audiotaped conversation between petitioner and trial counsel. (See Resp't Ex. P.) In a supplemental submission, petitioner filed

an affidavit by Stubbs. In her affidavit, she stated that she was "only 50 to 60 percent sure" at the time of trial that petitioner was the man who assaulted her and that she "wasn't absolutely sure then that it was Nicholas Zimmerman who committed the crime against [her]." (See Resp't Ex. Q.) She stated that the District Attorney's office told her that she would be arrested as a material witness unless she testified and that she "reluctantly testified" at trial. (See id.) Petitioner also filed an unsworn affidavit stating that he had only met Stubbs very briefly on two occasions. (See id.) On September 23, 2003, the § 440 court denied petitioner's motion without a hearing. See People v. Zimmerman, Ind. No. 3296/98 (N.Y. Sup. Ct. Queens Co., September 24, 2003), available at Resp't Ex. T. The § 440 court found that Stubbs' affidavit did not contradict her testimony at trial and that, despite Stubbs' declaration that she was not entirely sure that the perpetrator of the crime and petitioner were the same person, there was sufficient evidence adduced at trial for the jury to make that determination. See id. at 3. The court found no evidence of a cooperation agreement between the prosecution and Stubbs. See id. at 4-5. The court rejected petitioner's newly discovered evidence claims, finding that the letter failed to support petitioner's ineffective assistance claim and noting that he failed to provide the audiotape or videotape to the court for its consideration. See id. at 5-6. The court found that Stubbs' identification of petitioner based on his photograph was not unduly suggestive, because it was only a confirmatory picture shown to her after she provided his name and address to the police as her assailant. See id. at 6-7. By order dated April 21, 2004, the Appellate Division denied leave to appeal. People v. Zimmerman, Ind. No. 3296/98 (N.Y. App. Div. 2d Dep't, April 21, 2004), available at Resp't Ex. W.

8

On April 7, 2004, Mr. Zimmerman filed a petition for a writ of error coram nobis. Petitioner claimed that he was deprived the effective assistance of appellate counsel by counsel's failure to (1) effectively support his argument pertaining to the missing witness charge; (2) sufficiently raise the argument that trial counsel was ineffective for waiving pre-trial motions; (3) challenge Stubbs' identification as unduly suggestive and attach her affidavit; (4) attach the affidavits of the alibi witnesses; and (5) adequately raise the issue that the trial court erred by precluding the alibi witnesses' testimony. (Resp't Ex. X.) The Appellate Division summarily denied petitioner's application on October 12, 2004. See People v. Nicholas, 782 N.Y.S.2d 651, 651 (N.Y. App. Div. 2d Dep't 2004.) The Court of Appeals denied leave to appeal on September 27, 2005. See People v. Nicholas, 837 N.E.2d 747 (N.Y. 2005.)

The instant petition was timely filed on February 16, 2006 in the Northern District of New York. The petition was transferred to the Eastern District of New York by order dated February 22, 2006.

## DISCUSSION

### A.    AEDPA Standard of Review

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), enacted in 1996, established a deferential standard that federal habeas courts must apply when reviewing state court convictions. 28 U.S.C. § 2254(d). The statute provides, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

9

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statutory language "clearly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule that contradicts" Supreme Court precedent or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that precedent." Id. at 405-06. With respect to the "unreasonable application" clause, "a federal habeas court . . . should ask whether the state court's application of clearly established federal law was objectively reasonable." Id. at 409. In determining whether an application was objectively unreasonable, "the most important point is that an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410. Interpreting Williams, the Second Circuit has added that, although "[s]ome increment of incorrectness beyond error is required[,] . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks and citations omitted).

This deferential review of state court judgments is available only when the federal claim has been "adjudicated on the merits" by the state court. Aparicio v. Artuz, 269 F.3d 78, 93 (2d Cir. 2001). If there is no such adjudication, the deferential standard does not apply, and "we

10

apply the pre-AEDPA standards, and review de novo the state court disposition of the petitioner's federal constitutional claims." Id. (citing Washington v. Schriver, 255 F.3d 45, 55 (2d Cir. 2001)). For the purposes of AEDPA, a state court "adjudicates" a petitioner's federal constitutional claims "on the merits" whenever "it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001). When a state court does so, a federal habeas court must defer in the manner prescribed by AEDPA to the state court's decision on the federal claim, even if the state court does not explicitly refer to either the federal claim or relevant federal case law. Id. To determine whether a state court has disposed of a claim on the merits, the court considers: "(1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance upon procedural grounds rather than a determination on the merits." Id. at 314 (quoting Mercadel v. Cain, 179 F.3d 271, 274 (5th Cir. 1999)). In addition, a "conclusive presumption" that the state court decision "rest[s] on the merits of the federal claim" applies to decisions "fairly appearing to rest primarily on federal law or to be interwoven with federal law . . . [a]bsent a clear and express statement of reliance on a state procedural bar." Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006) (holding that presumption of Harris v. Reed, 489 U.S. 255, 262-63 (1989), applies equally to both AEDPA-deference and procedural-bar determinations).

**B.    Petitioner's Claims**

1.    *Ineffective Assistance of Trial Counsel*

Petitioner claims he was denied the effective assistance of trial counsel by (a) counsel's decision to forgo pre-trial motions and investigation of petitioner's alibi defense in order to proceed directly to trial and (b) counsel's failure to list certain alibi witnesses on the notice of alibi and to call additional defense witnesses.

In order to demonstrate ineffective assistance of counsel, a petitioner must satisfy the two-pronged test established in Strickland v. Washington, 466 U.S. 668 (1984).  Under Strickland, a petitioner must demonstrate, first, that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," id. at 688, and second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694.  A court need not decide both prongs of the Strickland test if a party has made an insufficient showing on one.  See id. at 697.

In analyzing a claim that counsel's performance fell short of constitutional standards, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  Moreover, "[i]n assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct, and may not use hindsight to second-guess his strategy choices.'" Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (quoting Strickland, 466 U.S. at 690).  Thus, a petitioner cannot prevail on a claim of ineffective assistance merely because he disagrees with his counsel's strategy.  See Strickland, 466 U.S. at 689. However, failure to pursue a particular course of action is not considered strategic when it

12

is not a "conscious, reasonably informed decision made by an attorney with an eye to benefitting his client." See Pavel v. Hollins, 261 F.3d 210, 218 (2d Cir. 2001).

As petitioner's ineffective assistance of counsel claim was denied on the merits by the state court, he must show that the state court's decision was contrary to, or an unreasonable application of, federal law. The Second Circuit has already determined that the New York standard for ineffective assistance of counsel applied by the state court in its denial of petitioner's claim is not contrary to Strickland. See Eze v. Senkowski, 321 F.3d 110, 123 (2d Cir. 2003). Accordingly, in order to obtain federal habeas relief, AEDPA requires petitioner to show that the state court "'applied Strickland to the facts of his case in an objectively unreasonable manner.'" See Eze, 321 F.3d at 124 (quoting Bell v. Cone, 535 U.S. 685, 698-99 (2002)).

**(a)** ***Counsel's Demand for an Immediate Trial at the Expense of Pre-Trial Motions and Investigation of Petitioner's Alibi***

Petitioner argues that trial counsel acted in an objectively unreasonable manner when he waived all pre-trial motions at petitioner's arraignment and demanded an immediate trial. Petitioner claims that, in so doing, counsel waived a meritorious suppression motion. Petitioner contends that, had Stubbs' identification of petitioner been tested at a Wade/Rodriguez hearing, it would have been found unduly suggestive. In support of this claim, petitioner points to Stubbs' testimony at trial that she had met petitioner twice previously (see Tr. at 377) and her statement in an affidavit that she identified him from a single-photo display after petitioner's arrest (see Stubbs Aff. at 1, available at Resp't Ex. Q). He also relies on Stubbs' statement in her affidavit that, on the two occasions when she had previously encountered petitioner, it was only for approximately five minutes each time. (See id.) According to petitioner, Stubbs had insufficient

13

prior familiarity with petitioner for her identification to be considered merely confirmatory. (See Pet'r Mem. of L. at 11-14.)

Petitioner further claims that counsel's decision to proceed directly to trial prevented him from conducting a proper investigation. According to petitioner, such an investigation would have enabled petitioner to put forth an effective defense at trial. In support of this argument, petitioner provides affidavits from three potential alibi witnesses: Latina Boyd, Theophulus Brown, and Barry Alexander. In their affidavits, Boyd, Brown, and Alexander each state that they would have testified that petitioner performed at the JamRoc Club from 2:30 to 3:00 a.m. on September 19, 1998 and then stayed at the club speaking with the media and other artists for approximately an hour afterwards. (See Resp't Ex. G.) Petitioner also provides affidavits from two other witnesses—Samuel Belnavis and Natascha Dockery—who state that they would have testified that they viewed the incident and it was not petitioner who fired a gun in the air. (See id.) Samuel Belnavis (Jatanya Belnavis' father) states that he would have testified that he saw Barnes (Stubbs' boyfriend) or one of two other men accompanying Barnes fire the gun in the air and did not see petitioner. (See id.) Dockery states that she would have testified that she saw Barnes fire several shots in the air. (See id.) She further states that she told petitioner and Belnavis that she would testify on petitioner's behalf but was never contacted by counsel. (See id.) Petitioner claims that, had counsel had sufficient time to conduct an investigation, he would have located these witnesses and solicited their testimony.

Sufficient facts are apparent on the record before the court to support a conclusion that trial counsel's decision to demand an immediate trial was a reasonable trial strategy or, at a minimum, that the state court's finding to this effect was not an objectively unreasonable

14

application of <u>Strickland</u>. At petitioner's arraignment, trial counsel represented that he did not believe the complaining witness would appear at trial. According to counsel, this belief rested on a conversation between petitioner and Stubbs and a subsequent conversation between Stubbs and an individual sent by counsel's office. On both occasions, Stubbs communicated that she did not wish to pursue the charges. This information provided a reasonable basis for counsel to conclude, at that time, that it was in petitioner's best interest to proceed to trial as expeditiously as possible rather than risk a delay in which Stubbs might change her mind. Petitioner argues that counsel's decision was foolhardy because the prosecution had announced that it was ready for trial, so counsel should have assumed that Stubbs was prepared to testify. However, the prosecution's declaration of readiness contradicted the information trial counsel had received, and the arraignment court informed him that the only way he could test whether the prosecution was in fact ready was to proceed to trial. Given the information on which counsel was operating, it was not unreasonable to conclude that the prosecution was bluffing. Thus, counsel faced the choice of going forward with an immediate trial at which the complaining witness would likely not testify or taking the time to prepare more thoroughly for trial and risking the complaining witness coming forward.

In hindsight, counsel's decision to pursue the former course of action was unfortunate, as Stubbs testified and petitioner was unable to mount an effective defense. However, viewing the situation <u>ex ante</u>, as the court must, the appropriate path to choose was not so clear. Each course of action had certain risks and potential benefits. The path counsel settled upon was the more risky of the two, because it primarily relied on the belief that Stubbs would not testify. However, it also carried the higher potential payoff, because, without Stubbs' testimony, petitioner almost

15

certainly would have been acquitted. In making his decision, counsel forewent the more conservative course of action, which would have involved challenging Stubbs' identification of petitioner, locating alibi witnesses, and investigating other potential defenses. However, given the significant amount of deference the court must accord counsel's judgment, his decision to pursue the riskier course of action is not necessarily cause for alarm. In fact, the Second Circuit has repeatedly "declined to deem counsel ineffective notwithstanding a course of action (or inaction) that seems risky, unorthodox or downright ill-advised." Tippens v. Walker, 77 F.3d 682, 686 (2d Cir. 1996). The question before the court is whether counsel's rather bold move to press for an immediate trial at the expense of an in-depth investigation was supported by reasonable professional judgment. Such a determination requires an examination, from an ex ante perspective, of the course of action counsel chose to forgo.

According to petitioner's submission in his second § 440 proceeding, counsel told petitioner that he waived pre-trial motions because he felt petitioner would not have been entitled to a Wade hearing because Stubbs claimed she knew him. (See Resp't Ex. P at 29.) Petitioner claims that this was an incorrect interpretation of the law and relevant facts and that, as they had only met on two occasions previously, he would have been entitled to explore her familiarity with him via a hearing. Counsel had reason to believe that Stubbs knew petitioner, given that they had met on at least two occasions in recent temporal proximity to the incident, he was renting her car at the time of the incident, and she provided to the police his address and a nickname by which he was referred. In light of these facts, counsel's determination that the court would be unlikely to grant a Wade hearing was not an unreasonable conclusion.

16

The cases petitioner relies upon are not to the contrary. People v. Rodriguez, 593 N.E.2d 268 (N.Y. 1992), and People v. Williamson, 588 N.E.2d 68 (N.Y. 1991), only concern the question of whether there was sufficient familiarity between an identifying witness and a defendant to require a pre-Wade hearing, or a Rodriguez hearing, and do not reach the question of how the suppression motion should ultimately be resolved. See Rodriguez, 593 N.E.2d at 274 (requiring a pre-Wade hearing to be held to determine whether an identification was confirmatory when the witness had seen the defendant more than forty times at the grocery store where he worked); People v. Williamson, 588 N.E.2d at 68 (holding that the defendant was entitled to cross-examine a witness about her familiarity with the defendant at a pre-Wade hearing when she had seen him more than thirty times at a local store and in the neighborhood). Petitioner also refers to In re Duane F., 764 N.Y.S.2d 434 (N.Y. App. Div. 1st Dep't 2003), in which the state court concluded that the prosecution had not met its burden to prove that the witness was sufficiently familiar with the defendant that the identification was merely confirmatory, when the only relevant evidence in the record was a statement that the witness knew the defendant through her boyfriend. Id. at 444-45. In that case, the problem was that the prosecution had failed to elicit testimony from the witness as to the nature and duration of her encounters with the defendant, so the record in that regard was incomplete. Id. The court there did not decide whether, had such testimony been elicited, such contacts would have been sufficient.

Here, petitioner has essentially raised a number of questions relating to the extent of Stubbs' familiarity with him that could have been employed on cross-examination at a Rodriguez hearing. However, petitioner has failed to establish a reasonable basis for counsel to believe, at the time he waived petitioner's pre-trial motions, that the court would ultimately suppress

17

Stubbs' identification. Based on the facts available to defense counsel at that time, it would have been reasonable to conclude—as the § 440 court ultimately held when confronted with this issue—that Stubbs had sufficient familiarity with petitioner to independently support her in-court identification.

Petitioner is on stronger footing in his complaint that trial counsel was unduly rash in failing to allot sufficient time to enable proper investigation of petitioner's alibi defense and other potential evidence. It seems clear that counsel should have realized that demanding an immediate trial would make it difficult to fully investigate and prepare petitioner's defense, particularly given that the incident happened more than three years prior to petitioner's arraignment. According to petitioner, counsel was aware of petitioner's alibi defense at the time he told the court he was ready for trial but had not yet investigated it. (See Zimmerman Aff. at 1, available at Resp't Ex. G.) Further, several days after petitioner's arraignment, counsel acknowledged that his declaration of readiness for trial meant that he would be unable to prepare petitioner's full list of desired witnesses. (Id. at 2.)

However, counsel's apparent decision to truncate his investigation of petitioner's alibi or eyewitnesses was not unreasonable. As explained by the Supreme Court,

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

Strickland, 466 U.S. at 690-91. Clearly, a decision to limit investigation of a potentially viable alibi defense is a weighty one that should not be made lightly and, accordingly, requires a sound

strategic objective. Cf. Garcia v. Portuondo, 459 F.Supp.2d 267, 287-88 (S.D.N.Y. 2006) (holding that counsel's failure to investigate an alibi defense was not justified by the weakness of the prosecution's case or cost and time constraints). However, in light of the information available to trial counsel at the time of petitioner's arraignment, his decision to press for an immediate trial was not unreasonable. As discussed above, counsel had valid reasons to believe that the prosecution would be unable to produce the complaining witness should the trial take place in the near future.[2] Taking advantage of this opportunity meant waiving a likely meritless motion to suppress Stubbs' identification of petitioner and significant limitations on his ability to investigate an alibi or other defenses. The record reveals no reason why counsel should have believed at that time that an investigation would surface additional eyewitnesses to the event, particularly in light of the significant length of time that had already passed since the incident in question. Under these circumstances, reasonable lawyers could differ as to which course of action would ultimately be more beneficial for their client. Accordingly, the court concludes that the state court's denial of petitioner's ineffective assistance of counsel claim on this basis was not objectively unreasonable.

---

[2]These specific reasons for disbelieving the prosecution's statement that it was ready for trial distinguish this case from People v. Gil, 729 N.Y.S.2d 121 (N.Y. App. Div. 1st Dep't 2001), on which petitioner relies. In Gil, defense counsel agreed to waive all motions at arraignment, stating that the prosecution had been known "to use their state of readiness, so-called readiness, in order not to have the time tolled against them. It has happened to me in the past, Judge, when we're ready to go to trial." Id. at 126. The First Department held that the potential benefit of forcing the prosecution to accrue speedy trial time at the expense of a colorable suppression motion was not a valid strategic purpose and that counsel was deficient for pursuing that course of action. See id. Here, counsel's reason for taking such a step was both specific to this case—as opposed to a supposition based solely on past experience—and also had a much higher potential benefit.

**(b)    _Failure to List Certain Alibi Witnesses on the Notice of Alibi and Failure to Call Others_**

Next, the court considers whether, in light of the time constraints presented by counsel's decision to seek an immediate trial, his subsequent attempts to investigate and prepare petitioner's defense were reasonable. Specifically, petitioner complains that counsel only listed three alibi witnesses—Andrew, Brian and Chris Dallyrymple—on the notice of alibi at the exclusion of others, namely, Latina Boyd, Theophulus Brown, and Barry Alexander. Petitioner further complains that counsel never made the Dallyrymples available to the prosecution, as he stipulated he would, and never called them to testify. Petitioner also charges that counsel, when seeking to introduce Haron Wilson and Theophulus Brown as witnesses, incorrectly told the trial court that they could not testify as to petitioner's alibi but only to the existence of a contract for him to perform at the time of the incident, thus causing the trial court to preclude their testimony. He additionally complains that counsel failed to call Samuel Belnavis and Natascha Dockery as eyewitnesses to the event.

Under the circumstances, it appears that counsel made reasonable efforts to investigate and present petitioner's defense. As discussed above, counsel recognized that the limited time available prior to trial meant that it would be impossible to prepare all the witnesses that petitioner wanted to testify. According to petitioner, counsel stated that he believed the testimony of only two witnesses was required to win the case. (See Zimmerman Aff. at 2, available at Resp't Ex. G.) Given that the prosecution's case rested nearly exclusively on the testimony of one witness, this was not an unreasonable perspective. Further, counsel likely understood that, as proved to be the case, convincing the court to accept an alibi defense on the

20

eve of trial would be challenging, and therefore it was preferable to limit the number of individuals identified in the notice. Although the record does not make clear why counsel decided to list the Dallyrymples on the notice as opposed to other potential witnesses, the court has no reason to believe that counsel did not have a strategic basis for that decision. Petitioner's affidavit states that, on November 25, 2001, he provided counsel with a list of twelve potential witnesses. (See id. at 2.) Counsel filed the notice of alibi listing the names of the three Dallyrymples on November 26, 2001, which, although this filing occurred before counsel was able to complete his investigation, was a reasonable decision because it was important to file the notice as early as possible in order to maximize the chances that it was accepted. Petitioner's affidavit indicates that counsel told him that he called all of the potential witnesses between November 27, 2001 and December 6, 2001 but they did not call him back. (See id.) Again, this supports a finding that counsel, even given the time constraints under which he was operating, made reasonable attempts to investigate petitioner's defense. After counsel was unable to reach petitioner's witnesses, Mr. Zimmerman began calling them himself on December 6, 2001. (See id.) The affidavits of Boyd, Brown and Alexander indicate that they did not speak with counsel until either December 6 or 7, 1998, which was only days before trial. Therefore, it appears that counsel was not able to get in touch with them in time to add them to the list of names provided on the notice of alibi.

The record is also not entirely clear as to why, having listed the Dallyrymples on the notice of alibi, counsel failed to produce them to the prosecution prior to trial as agreed. However, on December 6, 2001, counsel requested an adjournment of the trial "in relation to the alibi witnesses" (see Tr. at 18), suggesting that he was having difficulty locating them.

21

Unfortunately for petitioner, the trial court denied counsel's application, but his attempt to obtain further time for his investigation appears reasonable.

After failing to locate the Dallyrymples in time for trial, counsel sought to introduce the testimony of Wilson and Brown. While petitioner complains that counsel misinformed the court that they could not testify to his alibi when subsequent statements by both indicate that they could have done so, counsel's statement to this effect appears to have been a rather clever attempt to circumvent the notice of alibi requirement in N.Y. Crim. Proc. Law § 250.20(1). Indeed, the trial court interpreted it as such, finding that counsel was attempting to use Brown and Wilson's testimony about the contract as a means to present an alibi without giving proper notice. (See Tr. at 563, 569.) While the trial court ultimately precluded the evidence on these grounds, it appears that counsel had a reasonable strategic purpose for framing their testimony in the manner that he did.

Lastly, the court finds that petitioner has failed to establish that counsel was or should have been aware that Samuel Belvanis and Natascha Dockery were eyewitnesses to the incident in question. Petitioner's affidavit states that he included both individuals on the list of twelve potential witnesses he provided to counsel on November 25, 2001. (See Zimmerman Aff. at 2.) Petitioner does not indicate what information, if any, he provided to counsel about how each witness could be useful to his defense or whether he distinguished potential alibi witnesses from potential eyewitnesses when he gave counsel this list. According to petitioner, counsel told him that by December 11, 2001—the first day of trial—he was able to speak to most of the witnesses and found them to be credible. (See id.) However, there is no information on the record indicating that counsel was able to reach Samuel Belnavis or Dockery. Samuel Belvanis'

22

affidavit does not indicate that he was willing or available to testify at trial or had communicated with counsel at that time. (See Belnavis Aff. at 1, available at Resp't Ex. G.) Dockery states in her affidavit that she told Jatanya Belvanis and petitioner that she would testify on petitioner's behalf at trial but was never contacted by counsel. (See Dockery Aff. at 1, available at Resp't Ex. G.) However, the record is silent as to whether Jatanya Belvanis or petitioner communicated the substance of Dockery's anticipated testimony to counsel. When Samuel Belnavis and Dockery testified at petitioner's escape attempt trial about the events they observed on the night of the incident, neither witness testified to coming forward as eyewitnesses at the time of the trial in question. (See Resp't Ex. CC.) Consequently, petitioner has failed to provide a sufficient factual basis for his claim that counsel was or should have been aware of potential eyewitnesses to testify for the defense and was therefore ineffective for failing to call them.

For these reasons, the court finds that trial counsel's performance with regard to investigating and seeking to introduce defense witnesses was not constitutionally deficient or, at a minimum, that the state court's decision to this effect was not objectively unreasonable.

### (c) *Cumulative Effect of Counsel's Alleged Errors and Omissions*

Even considering trial counsel's alleged errors and omissions cumulatively, the state court was not objectively unreasonable in denying petitioner's ineffective assistance of counsel claim. As discussed in detail above, counsel's decision to proceed immediately to trial was reasonable under the circumstances. Having decided to pursue this course of action, counsel made reasonable efforts to prepare petitioner's defense in the limited time available to him. That petitioner may have disagreed with counsel's choices does not compel a contrary conclusion in this regard, as the determinations made by counsel, exercising professional judgment, were

23

appropriately his to make. Petitioner presents persuasive evidence that, in hindsight, an alternate course of action would have been preferable. However, viewed ex ante, counsel's performance did not fall outside "the wide range of reasonable professional assistance," see Strickland, 466 U.S. at 689, particularly in light of the deferential review of this claim mandated by AEDPA.

## 2.    Right to Compulsory Process

Next, petitioner claims that the trial court's rulings preventing him from calling alibi witnesses violated his right to compulsory process. Specifically, he contends that the trial court's denial of a continuance prevented him from calling the Dallyrymples and the trial court improperly precluded him from calling Brown and Wilson. For the reasons given below, the court concludes that this claim should be deemed exhausted but procedurally barred. Even assuming, arguendo, that petitioner provided sufficient evidence of his actual innocence to enable the court to overlook the procedural bar, the underlying constitutional claim fails on the merits.

### (a)    *Exhaustion and Procedural Default*

Unless certain limited exceptions apply, a petition for a writ of habeas corpus may not be granted unless it appears that "the applicant has exhausted the remedies available in the courts of the State." See 28 U.S.C. § 2254(b)(1). In order to exhaust a claim, a petitioner "must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney Gen. of New York, 696 F.2d 186, 191 (2d Cir. 1982) (citing Wilwording v. Swenson, 404 U.S. 249 (1971)). "In order to have fairly presented his federal

claim to the state courts the petitioner must have informed the state court of both the factual and the legal premises of the claim he asserts in federal court." Id.

Claims that are unexhausted in the state court may be deemed to be exhausted and procedurally barred if the state court to which he would be required to present his claim would find the claim procedurally barred. See Gray v. Netherland, 518 U.S. 152, 162 (1991); Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994). A federal court can examine a petitioner's habeas claims despite a procedural default only if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 735 (1991).

Petitioner did not fairly present his claim that he was denied his right to compulsory process to the state court in either his direct appeal or either § 440 motion. The table of contents to his direct appeal brief and the section headings in his direct appeal brief and application for review by the Court of Appeals each indicates an intent to argue, along with his ineffective assistance claim, that "The Trial Court Committed Reversible Error when it Precluded the Defense from Calling the Alibi Witnesses." (See Resp't Ex. A, at iv, 40; Resp't Ex. D at 14.) However, that section of each brief, while recounting the factual background regarding the alibi witnesses, attributes the problem to ineffective assistance of counsel and not to any error by the trial court. Petitioner's reply brief on direct appeal also is silent in this regard. Essentially, it appears as though appellate counsel abandoned the claim relating to trial court rulings. This seems consistent with the impression of both respondent and the Appellate Division, as neither respondent's briefs nor the Appellate Division decision make any reference to such a claim.

25

Petitioner did argue in his <u>coram nobis</u> petition that appellate counsel was ineffective for failing to raise the claim at issue. (<u>See</u> Resp't Ex. X at 38-44.) However, a petition for a writ of error <u>coram nobis</u> does not exhaust the underlying claims advanced to support the claim of ineffective assistance of appellate counsel. <u>Turner v. Artuz</u>, 262 F.3d 118, 123 (2d Cir. 2001). Under these circumstances, petitioner's claim was not fairly presented to the state courts and, accordingly, it is unexhausted.

Having failed to raise this claim on direct appeal, petitioner cannot bring it in a § 440 motion to vacate judgment. <u>See</u> N.Y. Crim. Proc. Law § 440.10(2)(c) (barring collateral review if sufficient facts appeared on the record to have permitted the claim to be raised on direct review but the defendant unjustifiably failed to raise it). The facts underlying this claim would have been apparent from the face of the record. Indeed, they were recounted in petitioner's briefs on direct appeal. Since petitioner's claim that the state court violated his right to compulsory process by preventing him from calling alibi witnesses could have been raised on direct review but was not, it is deemed exhausted and procedurally barred.

Petitioner claims that ineffective assistance of appellate counsel constitutes cause to excuse any procedural default. To establish cause on this basis, petitioner must show that appellate counsel's omission of this claim was constitutionally deficient under the two-pronged <u>Strickland</u> test. <u>See</u> <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000). Under the first prong, a habeas petitioner may establish constitutionally deficient assistance if he shows that his appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." <u>Clark v. Stinson</u>, 214 F.3d 315, 322 (2d Cir. 2000). When examining who was responsible for the omission of petitioner's alibi defense from his trial—defense

counsel or the trial court judge—a stronger claim can be made attributing the blame to trial counsel's error. Appellate counsel could have reasonably presumed that claiming both ineffective assistance of trial counsel and trial court error in relation to the alibi witnesses would have diluted the force of the ineffective assistance of trial counsel claim. Therefore, appellate counsel could have reasonably decided to omit the claim related to trial court error so that he could frame the facts in such a manner that it would make it more likely for the ineffective assistance claim to succeed. Accordingly, petitioner has failed to establish that ineffective assistance of appellate counsel constitutes cause sufficient to overcome the procedural bar.

Petitioner also urges the court to review his claim on the merits based on the miscarriage of justice exception to the procedural default rule. Under this exception, evidence of actual innocence serves as a "gateway" to enable a habeas court to consider a procedurally defaulted claim on the merits when a petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." Schlup v. Delo, 513 U.S. 298, 316 (1995). Establishing that a petitioner was actually innocent of the crime for which he was convicted within the meaning of this exception requires him to show that "in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" House v. Bell, 126 S.Ct. 2064, 2076-77 (2006) (quoting Schlup, 513 U.S. at 327). This determination should be made "in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." Schlup, 513 U.S. at 328 (internal quotation marks and citations omitted). Thus, deciding whether

27

petitioner has satisfied the exacting actual innocence standard requires considering all new evidence—not only that related to the underlying constitutional claim—and carefully examining its reliability vis-à-vis the evidence adduced at trial in order to make "a probabilistic determination about what reasonable, properly instructed jurors would do." See id. at 329.

In considering whether to embark on such a task, the court is mindful that the Supreme Court has articulated an avoidance principal in relation to claims of actual innocence, emphasizing that habeas courts "must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default." Dretke v. Haley, 541 U.S. 386, 393-94 (2004). Given that the purpose of the actual innocence showing is to enable a court to consider a procedurally defaulted claim on the merits, it appears reasonable to extend the avoidance principle to cases in which the constitutional claim at issue may be readily dismissed on the merits. The instant claim falls within this category and, accordingly, the court assumes, arguendo, that petitioner has made the requisite showing of actual innocence and proceeds to determine whether the petitioner's trial "was free of nonharmless constitutional error." See Schlup, 513 U.S. at 316.

### (b) *Denial of a Continuance*

"The right to call witnesses in order to present a meaningful defense at a criminal trial is a fundamental constitutional right secured by both the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment." Washington v. Schriver, 255 F.3d 45, 56 (2d Cir. 2001). However, a decision whether to grant a continuance, even one that impacts a defendant's right to call witnesses, is within the discretion of a trial judge and "'[o]nly an unreasoning and arbitrary insistence upon expeditiousness in the face of a

28

justifiable request for delay violates the Constitution.'" Drake v. Portuondo, 321 F.3d 338, 344 (2d Cir. 2003) (quoting Morris v. Slappy, 461 U.S. 1, 11 (1983)) (internal citations and quotation marks omitted). Whether a denial of a continuance is so arbitrary that it violates due process depends on the circumstances of a given case, particularly the explanation given when the request was denied. See Ungar v. Sarafite, 376 U.S. 575, 589 (1964).

Petitioner is unable to make the requisite showing that the trial court violated his right to compulsory process through its denial of petitioner's request for a continuance. This request was made on the date on which the trial was scheduled to begin and the only justification provided was that a continuance was needed "in relation to the alibi witnesses." (See Tr. at 18.) Petitioner has failed to show that the trial court's denial of the continuance was an abuse of the considerable discretion given to trial courts in matters related to scheduling. The trial court had already relaxed its earlier refusal to accept Mr. Zimmerman's notice of alibi after the prosecution agreed to accept the belated notice on the condition that the alibi witnesses were produced for an interview prior to trial. Further, the trial court had already granted defense counsel's request to adjourn the trial for several days, presumably in order to secure the witnesses' testimony. In addition, the trial court indicated that defense counsel could use the expected two day period of jury selection to make the witnesses available.

Even under arguably more extreme circumstances, the Second Circuit found a grant of habeas to be unwarranted for a trial court's denial of continuance. In Drake, the trial court granted a motion by the prosecution made near the close of its case to introduce a new expert to testify to a rather bizarre psychological syndrome in an attempt to support its theory of intent. See 321 F.3d at 342. On the Monday following the expert's Friday testimony, defense counsel

29

informed the court that, despite his attempts to find a rebuttal expert over the weekend, he could not locate any expert that had heard of the syndrome at issue and asked for a two week continuance to find an expert. See id. The trial court denied the request without proposing any type of accommodation and Drake was convicted. See id. The Second Circuit determined that the state court's dismissal of Drake's claim that the failure to grant a continuance violated his constitutional rights was not contrary to, or an unreasonable application of, federal law. See id. at 344.

Here, the trial court made efforts to accommodate the introduction of the alibi defense and denied a continuance in the face of a quite cursory explanation for the need for additional time. Under these circumstances, this court concludes that the trial court's denial of petitioner's request for an continuance was not an error of constitutional proportions.

### (c)    *Exclusion of Defense Witnesses Brown and Wilson*

Petitioner also claims that his right to compulsory process was violated by the trial court's exclusion of the testimony of Brown and Wilson for violation of the notice of alibi rules. Trial courts are allowed to impose rules on the identification and presentation of evidence, including notice of alibi requirements, in order to further "[t]he State's interest in the orderly conduct of a criminal trial." Taylor v. Illinois, 484 U.S. 400, 411 (1988). "Given the ease with which an alibi can be fabricated, the State's interest in protecting itself against an eleventh-hour defense is both obvious and legitimate." Id. at 412 n.17 (quoting Williams v. Florida, 399 U.S. 78, 81-82 (1970)). At the same time, the Supreme Court has emphasized that "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense." Id. at 408. Accordingly, under certain circumstances, the exclusion of defense witnesses may be an

30

unconstitutional sanction for a defendant's violation of pre-trial discovery rules. See Taylor, 484

U.S. at 409. In balancing the interests at stake, a court should weigh "the fundamental character

of the defendant's right to offer the testimony of witnesses in his favor" against the public

interests related to "[t]he integrity of the adversary process, which depends both on the

presentation of reliable evidence and the rejection of unreliable evidence, the interest in the fair

and efficient administration of justice, and the potential prejudice to the truth-determining

function of the trial process." Id. at 414-15.

In Taylor, the Supreme Court upheld the trial court's exclusion of an alibi witness whom

a defendant sought to introduce during trial, emphasizing that "the case fits into the category of

willful misconduct in which the severest sanction is appropriate." Id. at 416-17. Interpreting

Taylor, the Second Circuit concluded that, absent a finding of willfulness, exclusion of alibi

witness testimony for a discovery violation constitutes constitutional error if lesser sanctions

were readily available. See Noble v. Kelly, 246 F.3d 93, 100 (2d Cir. 2001); see also Bohan v.

Khulmann, 234 F.Supp.2d 231, 252 (S.D.N.Y. 2002), aff'd 66 Fed.Appx. 277 (2d Cir. 2003).

In the instant case, there is no indication that defense counsel's late notice of alibi was

willful; rather, it appears to have been due to the inability to locate the Dallyrymples to provide

alibi testimony. Further, an adjournment to allow the prosecution to interview Brown and

Wilson may have satisfactorily addressed potential prejudice to the prosecution from the late

notice, particularly given that their anticipated testimony was consistent with the information

provided earlier in the notice of alibi. Given that Brown and Wilson could only testify as to the

existence of a performance contract and not petitioner's whereabouts at the time of the crime,

there is a reasonable question as to whether they were actually alibi witnesses and therefore

31

properly excludable under the state notice of alibi requirement. However, the state court's decision that they were alibi witnesses is an interpretation of state law that cannot be disturbed unless it was arbitrary, see Noble v. Kelly, 246 F.3d at 98, which it was not. Accordingly, under the interpretation of Taylor set forth in Noble, petitioner has made a viable argument that the trial judge's exclusion of Brown and Wilson's testimony may have implicated his rights under the Compulsory Process Clause. It is unclear to this court whether the Noble court's interpretation of Taylor constitutes "clearly established Federal law, as determined by the Supreme Court of the United States," see 28 U.S.C. § 2254(d), or, even if it satisfies this standard, whether the trial court's denial of petitioner's § 330.30 motion to set aside the verdict—as the last state court decision to consider this issue on the merits—was an unreasonable interpretation of Taylor. However, the court need not decide these questions, because any error was harmless.

To obtain habeas relief for the exclusion of defense witnesses, a petitioner must establish that an error was not harmless. See Noble v. Kelly, 89 F.Supp.2d 443, 458 (S.D.N.Y 2000), aff'd, 246 F.3d 93, 98 (2d Cir. 2001). Satisfying this standard requires a petitioner to show that the error "'had substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 638 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)); see also Fry v. Pliler, No. 06-5427, 2007 U.S. Lexis 7715, at *17 (U.S. June 11, 2007) (holding that Brecht standard applies on habeas review regardless of whether the state court reviewed error for harmlessness under the standard set forth in Chapman v. California, 386 U.S. 18 (1967)). In determining whether a trial court's limitation on a defendant's right to call witnesses had the required impact on the trial verdict, a habeas court weighs whether the testimony of the omitted witnesses, in the context of the trial record as a whole, "'creates a

reasonable doubt that did not otherwise exist.'" Washington v. Schriver, 255 F.3d 45, 56 (2d Cir. 2001) (quoting Jones v. Stinson, 229 F.3d 112, 120 (2d Cir. 2000)).

The court notes that there is an obvious potential contradiction between the court's assumption in this section that petitioner has presented sufficient evidence of actual innocence to overcome the procedural bar and the court's finding that any error is harmless. However, these two determinations are not at odds, because the quantum of evidence considered differs with each inquiry. As discussed above, see Section B(2)(b) supra, deciding whether a petitioner has presented sufficient evidence of actual innocence to overcome a procedural default entails consideration of all evidence presented—including evidence adduced at trial and newly discovered evidence without regard to admissibility—to determine whether scrutiny of petitioner's constitutional claims is warranted. However, on harmless error review, the court focuses on whether the particular constitutional violation alleged had the requisite impact on the verdict. See Kotteakos v. United States, 328 U.S. 750, 764 (1946) ("[T]he question is, not were [the jurors] right in their judgment, regardless of the error or its effect upon the verdict. It is rather what effect the error had or reasonably may be taken to have had upon the jury's decision.")

With respect to the alleged error at issue here—the trial court's exclusion of the testimony of Brown and Wilson—the court concludes that any error was harmless. According to the proffer by defense counsel, Brown and Wilson's testimony would have been limited to the existence of a contract for petitioner to perform at JamRoc Club at 2:00 a.m. the morning of the incident. The subsequent affidavit by Brown and letter by Wilson indicate that these witnesses could also have testified to petitioner's performance at the club and subsequent media interviews.

However, had the trial court granted petitioner's application to introduce their testimony, direct examination would have been restricted to the scope of the testimony expressly proffered. Thus limited, their testimony would have been unlikely to have altered the jury's verdict. Although the prosecution's case against petitioner was relatively weak, testimony about the mere existence of a performance contract for the night in question would not be sufficient to create reasonable doubt. The witnesses' anticipated testimony would not have been persuasive evidence of an alibi because it would have raised too many questions, such as whether the performance took place as scheduled, whether the crime charged could have occurred after the performance, and why no defense witnesses were able to testify to the actual performance. Thus, the court finds that any error by the trial court in excluding Brown and Wilson's testimony was harmless.[3] Petitioner's claim that his right to compulsory process was violated by the trial court's actions is, accordingly, dismissed.

3.    **Improper Bolstering of the Complaining Witness's Identification**

In addition, petitioner contends that the trial court erred in allowing improper bolstering of the complaining witness's identification by: (1) permitting Karisha Brathwaite to testify that she heard Stubbs exclaim "Sean!" when she initially saw her assailant; and (2) allowing

---

[3]Even if the court considered the impact of the exclusion of Brown and Wilson's testimony together with the denial of a continuance to secure the Dallyrymple's testimony, any error would be harmless. According to petitioner's submissions in support of the instant petition, after his conviction he hired a private investigator, retained counsel to represent him in his first § 440 proceeding, and secured affidavits from five other individuals to present to state courts. However, none of these efforts yielded affidavits or any other correspondence from the Dallyrymples. Accordingly, the court concludes that petitioner has failed to make a factual showing that a continuance would have enabled him to secure the Dallyrymple's testimony or that they would have been able to provide alibi testimony on his behalf.

Detective Kanehl to testify that he arrested petitioner after interviewing Stubbs. This claim was not brought on direct appeal and was apparent from the record. Petitioner did refer to the claim in his petition for a writ of error coram nobis in support for his claim of ineffective assistance of appellate counsel, but that did not exhaust the underlying claim. See Turner v. Artuz, 262 F.3d 118, 123 (2d Cir. 2001). Therefore, petitioner's claim of improper bolstering is unexhausted and would now be procedurally barred. Again, the court need not determine whether petitioner has provided sufficient evidence of his factual innocence to satisfy the fundamental miscarriage of justice exception to the procedural bar, as petitioner's claim lacks merit.

Petitioner's claim is premised on New York state law, which prohibits an identification by one witness to be "bolstered" by testimony by another witness that merely corroborates that the identification occurred. See Snow v. Reid, 619 F. Supp. 579, 582 (S.D.N.Y. 1985). In order for an evidentiary error under state law to constitute a due process violation under the federal Constitution, a petitioner must show "that the error was so pervasive as to have denied him a fundamentally fair trial." Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985) (citing United States v. Agurs, 427 U.S. 97, 108 (1976)). Satisfying this standard requires a petitioner to establish that the evidence was (a) erroneously admitted under New York law and (b) "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985). For the reasons stated below, neither of these criteria is met.

With regard to Brathwaite's testimony that she heard Stubbs exclaim "Sean!" when she saw a person with a gun reach into the car, the case law concerning bolstering that petitioner relies on is inapposite. The New York rule relates to repeated testimony by individuals that an

35

individual identified a defendant in a photo array or lineup, not to spontaneous identification during the course of the crime alleged. See People v. Trowbridge, 113 N.E.2d 471, 474 (N.Y. 1953). The trial court admitted the testimony at issue under the spontaneous declaration exception to the hearsay rule. See Tr. at 300 (admitting the statement on the ground that "it's part of the res gestae"). In determining whether a statement may be admitted under this exception, state courts consider "the declarant's proximity to the occurrence, which furnished an adequate opportunity to observe, the professed shock, . . . the immediacy of the utterance following the event," and whether the declarant was testifying. People v. Caviness, 342 N.E.2d 496, 500 (N.Y. 1975). All of these criteria were met here, as Stubbs made the statement when she saw the individual reaching into the car, it was a situation likely to be shocking, she made the declaration simultaneously with her observation, and Stubbs subsequently testified and therefore could have been cross-examined about this exclamation. Further, given that defense counsel elicited on cross-examination that Brathwaite could not identify the person with the gun (see Tr. at 312), her testimony as to Stubbs' exclamation was not sufficiently material to have provided the basis for petitioner's conviction.

Likewise, petitioner has failed to establish that the trial court erred in admitting the testimony of Detective Kanehl. Petitioner complains that on direct examination Detective Kanehl testified that he spoke with Nikia Stubbs, after which he was able to identify a suspect, and then subsequently arrested petitioner. (See Tr. at 456-58.) The detective never testified as to any identification of petitioner by Stubbs and therefore no Trowbridge error was committed. While a jury could infer from the detective's testimony that Stubbs provided a description of petitioner that formed the basis for his arrest, petitioner has failed to establish that this violates

36

state law. Further, petitioner has not made the necessary showing that the disputed testimony was material to the verdict. According, petitioner's claim is dismissed.

### 4.    Conviction Based on Perjury

Petitioner next claims that the prosecution knowingly solicited perjured testimony from Stubbs that she was not testifying under a cooperation agreement. At petitioner's trial, Stubbs testified that she pled guilty to federal fraud charges and had yet to be sentenced. (See Tr. at 370-71.) She testified that neither the federal prosecutor from the United States Attorney's Office nor anyone from the District Attorney's office had promised her a benefit in exchange for her testimony. (See id. at 371-71.) Petitioner claims that this testimony is contradicted by statements by Stubbs in an affidavit and in a telephone conversation recorded by petitioner without her knowledge.[4]

A conviction based on perjured testimony is analyzed under the Due Process Clause of the Fourteenth Amendment. Napue v. Illinois, 360 U.S. 264, 269 (1959) (citations omitted). The petitioner has the burden of demonstrating, by a preponderance of evidence, that the witness committed perjury, and, in determining whether perjury occurred, a court must "weigh all the

---

[4]Petitioner never presented the tape recorded conversation with Stubbs to the state courts. Therefore, he has not exhausted the factual basis for this claim as required. See Daye v. Attorney General, 696 F.2d 186, 190 (2d Cir. 1982) (en banc). Although the factual basis for petitioner's claim is unexhausted, the court nevertheless opts to exercise its discretion to deny the claim on the merits because it is "patently frivolous." See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."); see also Pratt v. Greiner, 306 F.3d 1190, 1197 (2d Cir. 2002) (recognizing that district court may deny on the merits unexhausted habeas claims); Wheeler v. Phillips, No. 05 Civ. 4399, 2006 WL 2357973, at *5 (E.D.N.Y. Aug. 15, 2006) ("The law is unsettled in the Second Circuit regarding the proper response to habeas petitions containing unexhausted claims. A majority of district courts in the Second Circuit dismiss unexhausted claims that are 'patently frivolous.'").

evidence of perjury before it." See Ortega v. Duncan, 333 F.3d 102, 106-07 (2d Cir. 2003). A conviction must be set aside if "the prosecution knew, or should have known, of the perjury," and "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." United States v. Agurs, 427 U.S. 97, 103 (1976). The Second Circuit held in Ortega that, "when false testimony is provided by a government witness without the prosecution's knowledge, due process is violated only if the testimony was material and the court is left with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted." 333 F.3d at 108 (internal quotation marks and citations omitted) (emphasis added).

Petitioner has failed to establish that Stubbs' testimony was perjured. No evidence before the court supports petitioner's allegation that Stubbs was promised leniency in exchange for her testimony. In her affidavit, Stubbs states that the District Attorney's office told her she would be arrested as a material witness if she did not cooperate and that she was concerned about how such an arrest would impact her bail status. (See Stubbs Aff. at 1-2, available at Resp't Ex. Q.) As the § 440 court found, this affidavit does not indicate that Stubbs was motivated by a deal that should have been disclosed but, rather, by reasonable concerns about potential negative ramifications of refusing to cooperate. The tape-recorded conversation yields little more. In the conversation, Stubbs states that the Assistant District Attorney ("ADA") prosecuting the case told her that she would try to speak to the federal prosecutor. (See Ct. Ex. G, at 1-2, 9-12.) However, Stubbs states that the ADA did not promise her anything and they had no written agreement. (See id.) The court finds such evidence is insufficient to support a federal constitutional claim that the prosecution knowingly suborned perjury. Accordingly, petitioner's claim on this basis is dismissed.

## 5.    Ineffective Assistance of Appellate Counsel

Petitioner's final claim is that he was deprived of the effective assistance of appellate counsel by counsel's failure to effectively support his claim that the trial court erred in denying a defense motion to give a missing witness charge with regard to Stubbs' boyfriend Wilson Barnes. Petitioner contends that, when counsel raised this claim on direct appeal, he failed to adequately rely on the trial transcript in explaining Barnes' position in relation to Stubbs at the time of the incident. Petitioner charges that, had counsel better supported his argument, the Appellate Division would not have dismissed the missing witness claim on the ground that he failed to show the missing witness "had knowledge of a material issue or could provide noncumulative testimony." See People v. Zimmerman, 765 N.Y.S.2d 524, 525 (N.Y. App. Div. 2d Dep't 2003). Petitioner raised this ineffective assistance of appellate counsel claim in a petition for a writ of error coram nobis, and it was denied on the merits by the Appellate Division. See People v. Zimmerman, 782 N.Y.S.2d 651, 651 (N.Y. App. Div. 2d Dep't 2004).

The court finds that the Appellate Division's denial of petitioner's ineffective assistance of appellate counsel was not contrary to, or an unreasonable application of, Strickland. Appellate counsel's brief cogently argued that the trial court erred in denying defense counsel's motion for a missing witness charge. (See Resp't Ex. B at 25-32.) Moreover, he made the argument that petitioner advocates, namely that Barnes was in the front seat of Stubbs' car and was therefore in a position to view her assailant. (See id. at 7, 30; see also Kuby Aff. ¶¶ 3-5, available at Resp't Ex. Y.) The omission of a citation to the page in the trial transcript where Stubbs testifies to this effect is not sufficient to find that counsel's performance was constitutionally deficient. Further, petitioner has failed to show that any omission by counsel prejudiced him. Prior to dismissing

39

petitioner's claim on the merits, the Appellate Division also dismissed the missing witness charge claim on procedural grounds, finding that appellate counsel's arguments were not raised in the trial court and were therefore unpreserved for appellate review.  See People v. Zimmerman, 765 N.Y.S.2d at 525.  Therefore, even if appellate counsel had successfully argued petitioner's claim on the merits, it still would have been denied on procedural grounds. Accordingly, the state court's dismissal of petitioner's ineffective assistance of appellate counsel claim was not contrary to, or an unreasonable application of, federal law.

## CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is denied.  Because petitioner has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2) (1996), no certificate of appealability will be granted.  The Clerk of Court is directed to enter judgment accordingly.


SO ORDERED.

/S/

Allyne R. Ross
United States District Judge


Dated: June 25, 2007
       Brooklyn, New York

**Service List**:

**Pro Se Petitioner:**
Nicholas Zimmerman
02A1663
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13024

**Attorney for Respondent:**
Lisa Ellen Fleischmann
New York State Office of the Attorney General
Criminal Division
120 Broadway, 22nd Floor
New York, NY 10271